## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LINDSEY B. KANNADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-709-R |
| | ) |
| (2) UNIVERSITY OF OKLAHOMA BOARD OF REGENTS; | ) |
| (3) DEBORAH L. JAMES, Secretary of the Air Force; | ) |
| (4) JOHN M. MCHUGH, Secretary of the Army; | ) |
| (5) RAY E. MABUS Jr., Secretary of the Navy; | ) |
| (6) Lieutenant Colonel Mark Depew, Former Commander, Army ROTC; | ) |
| (7) Captain Rodney Clark, Former Commander, Naval ROTC; | ) |
| (8) Dr. Doug Gaffin, Dean, University College, | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

1. This is a civil action regarding the failure of at least three systems: the University of Oklahoma and the United States' military failed to prevent the sexual assault, sexual harassment and discrimination on campus and in the work place, failed to provide protection for those who have been victims and finally, failed to put in place remedial measures to prevent these events from harming others in the future. Both the University of Oklahoma and United States' military have active, well-advertised programs to prevent sexual assaults, sexual harassment and discrimination in the work place and in this case on campus and

protect and aide the victims initially after the incident and long term. These programs are at the forefront due to the epidemic of university campus sexual assaults and increasing number of sexual assaults in the United States' military.[1] The Plaintiff suffered from a brutal multi-day torture and rape perpetrated by an Air Force service member. Before the rape she had informed her chain of command of her concerns about her assailant. The Defendants' actions and inactions contributed to Plaintiff's brutal multi-day rape, but their conduct after the rape should shock the collective conscience of citizens of a civilized society; Defendants' collective actions amounted to continued and systematic physical, mental, and emotional assault on an extremely vulnerable young woman by her immediate supervisor and others while the University of Oklahoma and the United States military sat on the sidelines and allowed it to happen. The United States' military was a direct contributor to the Plaintiff's problems while they were proclaiming to have programs for prevention and protection. Defendant's wrongful conduct effectively ended her bright future as an army officer and

---

[1] Articles on the issues of campus sexual assault and the military's problems dealing with sexual assault are legion. See, for example: (a) Meredith Clark "Survivors Testify at Senate Hearing on Campus Sex Assault," June 26, 2014 available online at http://www.msnbc.com/msnbc/survivors-testify-senate-hearing-campus-sex-assault; and (b) Eliott C. McLaughlin "Military Chiefs Oppose Removing Commanders from Sexual Assault Probes," June 5, 2013 available online at http://www.cnn.com/2013/06/04/politics/senate-hearing-military-sexual-assault/ (quoting Senator Gillibrand saying the following to the Joint Chiefs: "You have lost the trust of the men and women who rely on you, that you will actually bring justice in these cases. They're afraid to report. They think their careers will be over.")

subjected her to continuous and systematic sexual harassment and discrimination due to her acquired disability from the Defendants' actions and inactions.

2. Jurisdiction and venue of this Court are properly invoked under 28 USC §§1331, 1343, 1346, 1357, 1361, 1367, 1391, and 1402.

3. At all times relevant, Plaintiff Lindsey B. Kannady has resided in Norman, Oklahoma.

4. Defendant University of Oklahoma Board of Regents is an institution of higher education organized under the laws of the State of Oklahoma.

5. Defendant Deborah L. James is the Secretary of the Air Force.

6. Defendant, John M. McHugh is the Secretary of the Army.

7. Defendant, Ray E. Mabus Jr. is the Secretary of the Navy.

8. Collectively, Secretaries James, Mchugh and Mabus, Jr. will be referred to as "Federal Defendants."

9. Defendant, Lieutenant Colonel (LTC) Mark Depew was the Commander of the Army Reserve Officer Training Corps unit located on the University of Oklahoma.

10. Defendant Captain Rodney Clark was the Commander of the Naval Reserve Officer Training Corps unit located on the University of Oklahoma.

11. Defendant Dr. Doug Gaffin was the Dean of the University College.

12. Collectively, Capt. Clark, LTC Depew, Dr. Gaffin will be referred to as "Individual Defendants."

13. Prior to the rape, Plaintiff was a U.S. Army reservist, a cadet in the Army ROTC program and a student at the University of Oklahoma.

14. Plaintiff's service and academic records were generally rated as excellent by Army's Cadet Command.

15. Plaintiff was brutally raped in November 2010. In this public Complaint the full details of the rape will not be recounted, but it lasted for multiple days, and it has left her with vaginal, anal and head injuries requiring surgical intervention, and which left her with lifelong effects. She is also currently receiving medical treatment due to the rape and the continuing trauma associated with the assault. Additionally, she had received mental health treatment for the rape, her work situation and the continuing trauma associated with the assault.

16. As a result of the rape, Plaintiff has suffered and continues to suffer from multiple surgeries and side effects of her injuries. This includes, but is not limited to, the implantation of separate devices to control her bladder incontinence and the seizure disorder that developed after the rape. As a result of her disabilities, Plaintiff has been on several medications that have numerous side effects which affect her overall quality of life.

17. Additionally, Plaintiff has been diagnosed with Post-Traumatic Stress Disorder (PTSD) caused by the brutal multi-day torture and rape and further exacerbated by the sexual harassment and discrimination she experienced at the University. Plaintiff displays multiple symptoms associated with PTSD including but not limited to: the inability to remember important aspects of the trauma,

difficulty concentrating and avoiding activities, thoughts, or feelings reminiscent of the trauma. However, these symptoms of PTSD were not limiting with respect to her job ability.

18. Additionally, Plaintiff's driving privileges were revoked due to the effects of the seizure caused by injuries sustained during the rape. The consequence of losing her license was that she requested rides from the cadre staff while she was employed at the University of Oklahoma.

19. Plaintiff's attacker was a member of the U.S. Air Force who had been treated for a serious mental health condition and was allegedly still being treated for the mental health condition by the U.S. Air Force. Additionally, the Plaintiff's attacker was a student at the University of Oklahoma and the University was allegedly aware of his mental instability. Defendants knew or should have known that the attacker posed a serious risk to Plaintiff and others, but Defendants failed to act to prevent him from harming himself or others.

20. After the rape, Plaintiff immediately notified Sergeant First Class Bettinger, military science instructor, who in turn notified the Army ROTC chain of command, and the Plaintiff also notified her Army Reserve chain of command. No immediate action to protect Plaintiff's health and safety was allegedly taken by the Army after this notification. Instead of acting to protect and help the Plaintiff, the Army ROTC acting commander, Major Jensen, attempted to suspend her security clearance multiple times rather than seeking medical assistance for the symptoms she described to him. Major Jensen also initiated a plan of action to get

5

her in the physical and medical evaluation board process for discharge from the Army Reserves and Army ROTC and sought to have her declared medically unqualified for commission. The Plaintiff was eventually disenrolled from the ROTC program approximately June 2012. However, the Plaintiff's status as a member of the U.S. Army Reserves and in what capacity is yet still unresolved but it appears the Plaintiff is currently a member because she fulfills annual requirements such as a physical and other training requirements for which receives some pay and benefits for accomplishing these tasks.

21. While still a cadet in ROTC, Plaintiff was employed by the ROTC program as a civilian secretary starting January 2012. While employed as a civilian secretary, the Dean of University College, Dr. Doug Gaffin, had administrative control over Plaintiff; however she worked directly for her immediate supervisor, LTC Mark DePew, the Army ROTC program commander and her current and former detachment commander.

22. Army ROTC and Navy ROTC programs are both housed within the same building at the University of Oklahoma.

23. In January 2012, Plaintiff filed internal complaint alleging a hostile work environment including sexual harassment and discrimination specifically, multiple incidents of rumors involving allegations regarding her alleged sexual activity, (i.e. that she was having sexual intercourse with her male co-workers) with the University Equal Opportunity Office. The University of Oklahoma investigated the allegations and produced a report of investigative findings and

6

recommendations. The University of Oklahoma investigation will be referred to herein as "OU Investigation" and the resulting report will be referred to as "OU Investigative Report."

24. In her complaint, Plaintiff alleged that rumors were being circulated about Plaintiff having a sexual relationship with her supervisor, LTC Depew. Plaintiff was not asked during the investigation whether there was an ongoing sexual relationship between her and LTC DePew.

25. The OU Investigation included Capt. Clark, and LTC Depew as investigators. Both commanders were potential witnesses and alleged perpetrators with a likely stake in the outcome from both the University of Oklahoma and military career standpoint. Having potential key witnesses as part of the investigative body is inconsistent with the systems in place for dealing with these types of events. Moreover, the Plaintiff accused Capt. Clark of harassment, specifically, starting the rumors or at a minimum propagating the rumors to his cadre, which were then disseminated to the midshipmen. The allegations of an inappropriate sexual relationship between an older supervisor and a younger subordinate who was still a cadet should have raised red flags in the investigation and have precluded LTC Depew from participating in it. Particularly given Plaintiff's health, emotional, and mental issues, these matters should have been taken more seriously. Instead, both Capt. Clark and LTC Depew were allowed to maintain their positions with respect to the Plaintiff, more specifically LTC DePew continued supervising the Plaintiff and the OU Investigative Report

7

recommended "that we allow time for the Commanding Officers [Capt. Clark and LTC DePew] to monitor the situation" but "no further action is required at this time."

26. The OU Investigative Report read that the "University has a legal requirement to provide work environments that are free of sexual hostility." Analyzing Plaintiff's allegations, it concluded that the "rumors as described by Ms. Kannady violate both university policy and federal and state statutes."

27. Plaintiff's brother, Christopher Lynn Kannady and sister-in-law, Susan Renee Kannady were appointed by the court on March 28, 2013 as co-guardians over Plaintiff due to the Plaintiff's then-existing incapacitation and incompetence. Plaintiff was unable to adequately care for herself or to look after her own affairs

28. On May 22, 2013, the Plaintiff's co-legal guardian filed an Equal Employment Opportunity Commission (EEOC) complaint ("Initial EEOC Charge") on behalf of the Plaintiff referring to a "summer of 2012…complaint…alleging harassment of varying degrees" by Capt. Clark and LTC DePew. Additionally, discrimination and retaliation were also cited in this initial filing. Plaintiff's disability at the time of the filing prevented her from fully assisting her brother in preparation and filing of the Initial EEOC Charge as fully as she could have had she been more capable. No meaningful actions were taken in response to the Initial EEOC Charge.

29. After the Initial EEOC Charge was filed, the State Defendants' and Individual Defendants "began to retaliate against Ms. Kannady based on her limitations caused by her disabilities at work." These disabilities at the time included installation of a device to control bladder incontinence and the requirement that she consume medications to control a seizure disorder that had developed after her rape.

30. LTC DePew would accommodate Plaintiff during the days when she would have side effects of her disabilities and medications, to include excessive pain and sleepiness. LTC DePew stated that Plaintiff was still able to adequately perform her duties. Dr. Gaffin disagreed with LTC DePew. As a result of the situation, Plaintiff stopped taking certain medications in fear of retaliation from Dr. Gaffin and potentially losing her primary source income.

31. Because of the Plaintiff's fear of losing her primary source of income, she ceased taking her medications. Ceasing taking her medications caused Plaintiff to have a life-threatening event while in her doctor's office that was directly attributable to the retaliation by Dr. Gaffin.

32. Dr. Gaffin ultimately fired Plaintiff. Within two weeks after her firing, Dr. Nicole Campbell offered Plaintiff her job back, wherein the Plaintiff accepted. However, the Plaintiff was placed into her same position under LTC Depew without any remedial measures being taken by the University to address the harassment, retaliation, and discrimination. After returning to the position, Plaintiff was subjected to renewed harassment, retaliation, and discrimination by

the University and the military, specifically by LTC Depew, and Capt. Clark, eventually leading to her mental incapacitation and subsequent guardianship.

33. On July 1, 2013 the Plaintiff's co-legal guardian filed a Charge of discrimination with the Oklahoma Attorney General's office and a second EEOC charge on behalf of the Plaintiff alleging discrimination, sexual harassment and retaliation against Capt. Clark for harassment and Dr. Gaffin for retaliation in violation of Title VII of the Civil Rights Act of 1964 and discrimination in violation of The Americans with Disabilities Act of 1990. No meaningful actions were taken in response to these charges.

34. The Plaintiff was the victim of the perfect storm between a rapist and multiple bureaucratic system failures wherein the Defendants' failed to act before the rape to secure necessary treatment for Plaintiff's attacker, an Air Force service member, and prevent the risk to society, more specifically the risk to the Plaintiff. The Defendants' then allowed a highly vulnerable young woman to be subjected to harassment by her immediate supervisor in a coerced sexual relationship and by the Navy commander both of whom were then included in the initial sexual harassment investigation. The failure of the systems did not stop there, but finally culminated in the discrimination and retaliation due to her disabilities leading to her eventual mental incapacitation. By causing the Plaintiff's mental incapacitation, Defendants removed her primary source of income. This improper firing and rehiring back into the same environment actively undermined her efforts to recover. These multiple failures by Defendants

constitute a continued systemic rape of the Plaintiff by the systems that were to prevent this from happening, protect and provide assistance to the victims when it did happen and remedy the situation to prevent future occurrences.

35. Plaintiff presented a claim to the Air Force (AFLOA/JACC Claim No. 13-5505), and a March 28, 2014 letter from Hildegarde C. Perlstein of the Claims and tort Litigation Division denied Plaintiff's claim as it was narrowly and improperly construed in that letter.

36. Plaintiff presented a claim to the Army (Claim No. 13-101-T019), and a Jan 20, 2015, letter from LTC Newt Hill of the Tort Claims Division denied Plaintiff's claim as it was no longer amenable to administrative resolution since the filing of a suit.

37. Plaintiff has not presented a claim to the Navy because at the time of the filing against the Air Force and the Army there were insufficient information to support a claim against the Navy but facts were recently discovered that would allow the Plaintiff to maintain a tort claim against the Navy.

38. Within 90 days of receiving the EEOC's right to sue letter on April 8, 2014, Plaintiff filed suit to enforce her rights on July 7, 2014.

**First Cause of Action**
**Retaliation and Discharge**

39. Plaintiff restates and incorporates herein by reference the preceding and subsequent allegations of this Amended Complaint.

40. Defendants retaliated against Plaintiff for engaging in protected activity by harassing her, including but not limited to, eliminating workplace duties and responsibilities, and then terminating her in violation of Title VII.

41. The effect of Defendants' discriminatory conduct has been to deprive the Plaintiff of equal employment opportunities because of her sex wherein the Defendants violated federal law and public policy.

## Second Cause of Action
### Denial of Constitutional Rights in Violation of Section 1981/ 1983

42. Plaintiff restates and incorporates herein by reference the preceding and subsequent allegations of this Amended Complaint.

43. Federal Defendants and Individual Defendants, acting under color of state law, deprived the Plaintiff of her constitutional rights. Specifically, Defendants denied equal protection to Plaintiff and, instead, discriminated against her based on her gender wherein the Defendants violated federal law and public policy.

## Third Cause of Action
## Violation of Americans with Disabilities Act

44. Plaintiff restates and incorporates herein by reference the preceding and subsequent allegations of this Amended Complaint against the Federal Defendants.

45. Plaintiff suffers from multiple disabilities as a result of the brutal rape. This disability physical or mental impairment that substantially limits one or more of Plaintiff's major life activities, she has a record of such an impairment, and was and is regarded as having such an impairment.

46. Federal Defendants were on notice of Plaintiff's disability upon hiring, and Plaintiff repeatedly requested reasonable accommodations.

47. Plaintiff could, with reasonable accommodations, perform the all the essential functions of her job.

48. Plaintiff did not pose a direct threat to the health and safety of others, and the accommodations Plaintiff required would not have posed an undue hardship on Federal Defendants.

49. Federal Defendants initially provided reasonable employment accommodations but after Plaintiff filed her initial internal complaint, the Federal Defendants unreasonably refused to continue to provide Plaintiff with reasonable employment accommodations and, instead, unreasonably limited her responsibilities such that they terminated her employment.

50. The effect of Federal Defendants' discriminatory conduct has been to deprive the Plaintiff of equal employment opportunities because of her disabilities wherein the Federal Defendants violated federal law and public policy.

WHEREFORE, the Plaintiff respectfully requests the following relief:

A. An Order granting a permanent injunction enjoining Defendants and their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex;

B. An Order requiring Defendants to institute and carry out policies, practices and programs that provide equal employment opportunities for present and future employees, and which eradicate the effects of the Defendants' past unlawful employment practices;

C. An Order requiring Defendants to make whole the Plaintiff by providing the following remedies in amounts to be determined at trial: back pay, with prejudgment interest; continuation of medical insurance and payment of such medical costs incurred and estimated for the future, out-of-pocket losses and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices; past and future pecuniary compensatory damages; past and future non-pecuniary compensatory damages, including but not limited to damages for emotional pain and suffering, humiliation, stress, and anxiety; front pay and training in lieu of reinstatement; and punitive damages;

D. Plaintiff further seeks the costs of this action and reasonable attorney fees thereby incurred; and

E. Such other legal and/or equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Edward L. White
Edward L. White, OBA # 16549
Edward L. White, P.C.
825 East 33rd Street
Edmond, Oklahoma 73013
Telephone: (405) 810-8188
Facsimile: (405) 608-0971
Email: ed@edwhitelaw.com
**ATTORNEY FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**

**JURY TRIAL DEMANDED**

### Certificate of Service

I hereby certify that on February 24, 2015, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System and a Notice of the Electronic Filing was transmitted to the ECF registrants listed below:

For State Defendants:
- Shawnae E. Robey – srobey@ou.edu
- Gus H. Butham – gbuthman@ou.edu
- Eric A. Moen – emoen@ou.edu

For Federal Defendants: Kay Sewell – Kay.Sewell@usdoj.gov

/s/ Edward L. White